UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:08-CV-00153

ROBERT STREET,   PLAINTIFFS
LISA MURPHY,
ROBERT CREEK,
KRISTEEN OWENS, and
BRANDY FILBACK,

v.

U.S. CORRUGATED, INC.   DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion for summary judgment [DN 25] by Defendant U.S. Corrugated, Inc. ("Corrugated"). Fully briefed, the matters are ripe for decision. For the reasons that follow, the motion is granted.

### I. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## II. FACTUAL BACKGROUND

This case involves claims of retaliation and wrongful termination after Plaintiffs complained of the abusive behavior directed at them by Robert Greathouse, one of the Defendant's[1] employees. Faced with financial struggles, Dennis Mehiel, CEO of Corrugated, hired Robert Greathouse, a "turn-around specialist," on August 20, 2007. Unfortunately, Greathouse's management style did not mesh well with some of the employees as he often yelled, used profanity, threw objects, made physical threats, and was generally difficult to work with. Plaintiffs Robert Creek, Lisa Murphy, Kristeen Owens, and Brandy Filback complained about Greathouse's abusive behavior the production manager, Plaintiff Robert Street. Murphy also drafted a written complaint detailing Greathouse's behavior. Street then relayed these complaints to Fred Barnett, the general manager, and Mehiel. Because of Greathouse's actions and employee protest, Mehiel removed Greathouse from his position on June 2, 2008.

Mehiel and Barnett then decided that further job cuts were necessary. Following six weeks of evaluation, Plaintiffs were told they were being terminated for alleged unsatisfactory job

---

[1] Defendant is an independent packaging producer located in Bowling Green, Kentucky, which turns corrugated cardboard into boxes based on consumer specifications.

2

performance, and in Creek's case, because his position was being outsourced. Plaintiffs allege they were retaliated against for reporting gender-based harassment. Of the six people who complained of Greathouse's behavior, five were laid off and one was demoted.

### III. DISCUSSION

Plaintiffs have made claims of: (1) gender-based discrimination; (2) retaliation; (3) breach of expressed or implied contract; (4) promissory estoppel; (5) intentional infliction of emotional distress; (6) terroristic threatening; (7) libel; (8) slander; (9) defamation; (10) tortious interference with Plaintiffs' ability to earn money; and (11) violation of the whistle-blower statute. Defendant argues that Plaintiffs' claims are without merit because there is no evidence of discrimination, Plaintiffs were not engaged in any protected activity, and Plaintiffs were at-will employees. Defendant also asserts that the remaining claims lack factual support. The Court will discuss each cause of action in turn.

#### A. Gender-Based Discrimination

Plaintiffs first assert a claim under Title VII of the Civil Rights Act of 1964 and K.R.S. § 344.040 prohibiting discrimination based on an employee's sex. Defendant alleges that Greathouse was equally abusive to all employees and therefore his actions were not discriminatory.

Title VII states that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). However, "Title VII is not a generic anti-harassment statute. In order to be actionable under Title VII, the harassment must be based on sex." Mullins v. Goodyear Tire & Rubber Co., 291 F. App'x 744, 750 (6th Cir. 2008) (quotation and internal citation omitted). See E.E.O.C. v. Harbert-Yeargin, Inc., 266 F.3d 498, 520 (6th Cir. 2001) (Guy, J., concurring) ("[I]f the

3

environment is just sexually hostile without an element of gender discrimination, it is not actionable" under Title VII.). In other words, although a viable claim for "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex," there must nevertheless be evidence "that the harasser was motivated by general hostility to the presence of [a particular gender] in the workplace." King v. Super Serv., Inc., 68 F. App'x 659, 663-64 (6th Cir. 2003) (quotation omitted).

Plaintiffs have not alleged that Greathouse's treatment was motivated by sexual desire. Thus, in this case, "'[t]he critical issue . . . is whether members of one sex [were] exposed to disadvantageous terms or conditions of employment to which members of the other sex [were] not exposed.'" Monak v. Ford Motor Co., 95 F. App'x 758, 765 (6th Cir. 2004) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). The record here indicates that both men and women equally fell victim to Greathouse's abusive management tactics. For example, Plaintiff Creek, a male employee, was subjected to extensive verbal abuse, cursing, threats, and had a piece of paper thrown at his face. Plaintiff Street was also involved in a verbal altercation with Greathouse in which Greathouse invited Street out to the parking lot. The female Plaintiffs also cite cursing and verbal abuse as grounds for their discrimination claim. Greathouse's actions were certainly inappropriate, but this does establish a Title VII claim absent the intent to target a specific gender. Nothing in the record supports such a conclusion. Accordingly, the gender-based discrimination claim is dismissed.

**B. Retaliation**

Plaintiffs next allege that they were terminated in retaliation for reporting Greathouse's acts of gender-based discrimination in violation of Title VII and the Kentucky Civil Rights Act.

4

Defendant, admitting that Greathouse acted inappropriately, claims that Plaintiffs were not engaged in protected activity when reporting his behavior. The Court agrees with Defendant.

Title VII's anti-retaliation provision, which resembles that of the Kentucky Civil Rights Act, "forbids employer actions that 'discriminate against' an employee . . . because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)). Accordingly, a plaintiff alleging retaliation under Title VII must establish that: "(1) he or she engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 345 (6th Cir. 2008).

Defendant has only challenged whether Plaintiffs engaged in protected activity so for purposes of this opinion, the remaining elements will be presumed. The Sixth Circuit has identified conduct that is considered "opposing," i.e. protected activity, to include "[c]omplaining to anyone (management, unions, other employees, or newspapers) *about allegedly unlawful practices*." Johnson v. Univ. of Cincinnati, 215 F.3d 561, 579 (6th Cir. 2000) (emphasis added). "A person opposing an apparently discriminatory practice does not bear the entire risk that it is in fact lawful; he or she must only have a good faith belief that the practice is unlawful." Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1312-13 (6th Cir. 1989). See Johnson, 215 F.3d at 579 (Opposition must be "based on a reasonable and good faith belief that the opposed practices were unlawful") (internal citation and quotation omitted). Thus, the only inquiry here is whether Plaintiffs' complaints were based on gender-based discrimination, an unlawful employment practice,

or, said differently, whether the complaints were merely based on general abusive behavior which is not unlawful under Title VII. If the former is true, then Plaintiffs' reporting will be protected activity and the Title VII claim will proceed. If the latter is true, then Title VII is not applicable.

The record fails to show that Plaintiffs were engaged in protected activity. Plaintiffs' complaints of cursing, yelling, threats, etc. were never coupled with any complaints that Greathouse's conduct was based on gender discrimination. Plaintiff Murphy's "Formal Harassment Complaint" is a five-page document prepared by her to identify and describe Greathouse's behavior. There is absolutely nothing in those five-pages that remotely suggests that Greathouse's behavior was based on gender. To the contrary, Murphy wrote that Greathouse had been verbally harassing "people" in the office. The document provides examples of both men and women being subjected to his tirades. Plaintiffs obviously believed that Greathouse's conduct made their work environment a hostile one and they opposed his presence at the factory and his intolerable management style. However, Title VII only protects employees from retaliation for having opposed an employer's *unlawful actions,* such as discrimination based on gender, age or race. There is no protection under the act for employees who simply complain about the boss being a bully.

Plaintiffs' allegations that Greathouse's conduct constituted gender-based discrimination only surfaced after the suit was filed and are inconsistent with the reported complaints at the time. Plaintiffs point to an internal investigation conducted by Corrugated which found that Plaintiffs "could no longer tolerate [Greathouse's] behavior and were preparing to file formal claims against the company. [Street] wasn't clear as to what claims would be made specifically but believed the employees felt they were the victims of sexual harassment." (Pls.' Resp. to Mot. Summ. J. Ex. 5.) However, the Sixth Circuit has held "a vague charge of discrimination in an internal letter or

6

memorandum is insufficient to constitute opposition to an unlawful employment practice. Balding-Margolis v. Cleveland Arcade, 352 F. App'x 35, 45 (6th Cir. 2009) (quotation omitted). Street's speculative assumption that a possible sexual harassment claim may be forthcoming is not the same as Plaintiffs making a specific complaint of sexual discrimination.

Plaintiffs were not engaged in protected activity prior to their termination in order succeed on a claim of retaliation. See Fox v. Eagle Distrib. Co., 510 F.3d 587, 592 (6th Cir. 2007) (Retaliation claim dismissed where "the record does not contain any evidence that [plaintiff] *specifically alleged discriminatory employment practices*") (emphasis added). Accordingly, the retaliation claim is dismissed.

**C. Breach of Contract**

Plaintiffs allege that they were wrongfully terminated because they were under either an expressed or implied employment contract. Defendant claims that Plaintiffs were at-will employees and therefore could be terminated with or without cause.

"Generally, in the absence of a specific contractual provision to the contrary, employment in Kentucky is terminable at-will, meaning that an employer may ordinarily discharge an employee for good cause, for no cause, or for a cause that some might view as morally indefensible. Miracle v. Bell Cnty. Emergency Med. Servs., 237 S.W.3d 555, 558 (Ky. Ct. App. 2007) (quotation omitted). See Steele v. Liberty Life Ins. Co., 2009 WL 1562940, at *6 (Ky. Ct. App. June 5, 2009) ("[E]mployees are typically considered to be 'at-will' employees unless there is a specific employment contract."); Byrd v. Packaging Unlimited, Inc., 2004 WL 539125, at *5 (Ky. Ct. App. March 19, 2004) (Plaintiff found to be at-will employee where "the letter contains no language or indication that [plaintiff] was to be employed by [defendant] as something other than an at-will

7

employee."). In sum, "[a]bsent a clear statement not to terminate without cause, the assumption is that the parties intended to enter into an ordinary employment relationship, terminable at the will of either party." McNutt v. Mediplex of Kentucky, Inc., 836 F. Supp. 419, 421 (W.D. Ky. 1993) (citing Shah v. Am. Synthetic Rubber Corp., 655 S.W.2d 489, 492 (Ky. 1983)).

Robert Street is the only Plaintiff who has presented documentation outlining some of the terms and conditions of his employment. It appears to be simply a recitation of the terms of the employment offer. The memorandum states that Street's salary would be $100,000 a year or $8,333.33 a month. (Pl.'s Resp. Ex. 1.) There is no specific provision as to the term of Street's employment in order to reasonably find he was not employed at-will. Furthermore, there is nothing in the memorandum which sets forth the conditions upon which he might be terminated. Thus, the Court finds Street was employed by Corrugated as an at-will employee.

The remainder of Plaintiffs, although claiming they were not at-will employees, have not presented any evidence indicating they were guaranteed employment as part of a contract. Instead, they have simply advanced: "Defendants [sic] have not produced any evidence to support that the Plaintiffs were instructed or understood that they were employed 'at will.'" (Id. at 24.) However, "whether notice had been provided or not, absent a specific contractual provision to the contrary, it [is] clear that [Plaintiffs'] employment with [Defendant] was indeed at-will." Tackett v. Mountain Comprehensive Care Ctr., 2009 WL 1025108, at *6 (Ky. Ct. App. April 17, 2009). Therefore, Plaintiffs' subjective understanding of their employment arrangement is inconsequential.

Furthermore, the fact that Plaintiffs were allegedly promised stable employment does not change their at-will employment status:

> In Kentucky a contract for "permanent employment", [sic] without consideration in addition to services to be performed by the employee

8

> and wages to be paid by the employer, permits either party to terminate the employment at will. Edwards v. Kentucky Utilities Co., 150 S.W.2d 916 (1941). Edwards is one of many cases in this jurisdiction holding that employment for an indefinite period of time may be terminated by either party at will. E.g. Louisville & N.R. Co. v. Offutt, 18 Ky. 303, 36 S.W. 181 (1896). This rule is not circumvented by labeling the term of employment as 'permanent', [sic] 'employment as long as the employee does honest and faithful work' or 'employment as long as he performs his duties in a successful or satisfactory manner.' Clay v. Louisville & N.R. Co., 71 S.W.2d 617, 619 (1934).

Shah, 655 S.W.2d at 491.

Accordingly, because no specific contractual provision existed outlining a definite length of employment, coupled with the fact that all the Plaintiffs admitted in their depositions to being at-will employees, the Court finds so.

Kentucky does recognize two exceptions to the "terminable-at-will" doctrine. "First, an employee's termination can be actionable where it is based upon the employee's refusal to perform an illegal act as a condition of employment. Second, [the court] will recognize a cause of action for wrongful termination where an employee is fired for exercising a legal right conferred by a statute." Tackett, 2009 WL 1025108 at *7 (citing Grzyb v. Evans, 700 S.W.2d 399, 402 (Ky. 1985)). Plaintiffs allege that Street and Creek fall within the second exception because they facilitated the reporting of illegal employment practices. However, as previously explained in section B, *supra*, Plaintiffs were not exercising a right conferred by statute because they were not engaged in protected activity. Therefore the exception does not apply and the breach of contract claim is dismissed.

### D. Promissory Estoppel

Plaintiffs have also advanced a claim of promissory estoppel stemming from alleged

representations that their employment was stable. The doctrine of promissory estoppel is applicable and binding to oral employment-at-will agreements when "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Meade Constr. Co. v. Mansfield Commercial Elec., Inc., 579 S.W.2d 105, 106 (Ky. 1979) (quoting Restatement (Second) of Contracts § 90 (1965)). Therefore, in Kentucky, a claim of promissory estoppel requires "'(1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise.'" Abney v. Amgen, Inc., 443 F.3d 540, 549 (6th Cir. 2006) (quoting Bergman v. Baptist Healthcare Sys., Inc., 344 F. Supp. 2d 998, 1003 (W.D. Ky. 2004)).

Plaintiffs allege that they detrimentally relied on various promises that their employment would remain stable. Plaintiffs rely on the following representations:

> 1. A letter to Street from Corrugated detailing his offer of employment which states, "Your salary will be $100,000 a year or $8,333.33 per month." (Pls.' Resp. Ex. 1.)
>
> 2. Representations from Mehiel to Creek in an email that he was doing a great job after inquiring about a firing list and to "[k]eep doing a job, and the company will have one for you." (Id. at Ex. 4.)
>
> 3. Promises to Filback that she could return to the plant floor if she experienced problems in her new position in customer service. (Id. at 14.)
>
> 4. Representations by Greathouse to Murphy in which he told her she was doing a great job and that he had told management to allow her to keep her job. (Id. at 7.)

According to the Restatement (Second) of Contracts § 2(1) (1981), a promise is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." This requires that the plaintiff show

10

"that an actual promise was made, [and] that the *promise was clear, definite, or unambiguous*." 31 C.J.S. Estoppel and Waiver § 117 (emphasis added). See Hesco Parts Corp. LLC v. Ford Motor Co., 377 F. App'x 445, 447 (6th Cir. 2010) (Sixth Circuit dismissing plaintiffs promissory estoppel claim because "there was no definite promise by [defendant] to compensate [plaintiff]"); Abney, 443 F.3d at 549 (Sixth Circuit agreeing with district court's conclusion that "the plaintiffs have not shown a strong likelihood of success on the merits [of a promissory estoppel claim] because the plaintiffs have not submitted any evidence of a clear promise by [defendant]."); Grand Connectivity, LLC. v. Centennial Commc'ns Corp., 106 F. App'x 928, 929 (6th Cir. 2004) (Sixth Circuit upholding dismissal of promissory estoppel claim because "plaintiff failed to establish sufficient indication of a definite and clear promise"); Calabro v. Calabro, 15 S.W.3d 873, 879 (Tenn. Ct. App. 2000) ("[T]he promise upon which the promisee relied must be unambiguous and not unenforceably vague."); Wing v. Anchor Media, Ltd. of Texas, 570 N.E.2d 1095, 1096 (Ohio 1991) ("A promise of future benefits or opportunities without a specific promise of continued employment does not support a promissory estoppel exception to the employment-at-will doctrine."). It can not be reasonably said that Defendant's vague representations constitute "clear, definite, or unambiguous" promises of assured employment.

Furthermore, Plaintiffs have not shown that they "'materially change[d] [their] position in reliance on the statement.'" Brooks Wells, Inc. v. PASW, LLC, 2009 WL 1160285, at *3 ( Ky. Ct. App. May 1, 2009) (quoting Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc., 113 S.W.3d 636, 642 (Ky. Ct. App. 2003)). Before taking their positions, all Plaintiffs admit to being employed at-will and that no promises were made regarding future employment at that time. (Def.'s Reply 6.) Plaintiffs then claim that promises were subsequently made that reasonably led them to believe their

11

job with the company was secure. However, even assuming this to be true, there is nothing in the record to suggest that the Plaintiffs *materially* changed their position because these representations were made. Stated differently, the representations did not induce action or forbearance as the record is clear that after the representations were made, Plaintiffs' position remained unchanged.[2]

Accordingly, Plaintiffs' promissory estoppel claim is dismissed.

**D. Intentional Infliction of Emotional Distress ("IIED")**

Kentucky adopted the tort of IIED in Craft v. Rice, 671 S.W.2d 247, 251 (Ky. 1984), which allows recovery for emotional harm if a plaintiff can "show that [defendant's] intentional or reckless conduct was so outrageous and intolerable that it caused severe emotional distress."[3] Brett v. Media Gen. Operations, Inc., 2010 WL 323136, at *5 (Ky. Ct. App. Jan. 20, 2010) (citing Stringer v. Wal-Mart Stores, Inc., 151 S.W.3d 781, 788 (Ky. 2004)). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. . . . . Where reasonable men may differ, it is for the jury . . . to determine whether . . . the conduct has been sufficiently extreme and outrageous to result in liability." Restatement (Second) of Torts § 46 cmt. h (1965). "Kentucky . . . takes a restrictive/limited approach to this tort[,]" Sacharnoski v. Capital Consol., Inc., 187 F. Supp. 2d 843, 845 (W.D. Ky. 2002), as "[l]iability has been found only where the conduct has been so outrageous

---

[2] The Court notes that Filback was promised she could return to her work on the factory floor and changed her position by remaining in customer service based on this representation. However, a promise to allow Filback to return to the factory floor is not a definite promise of future employment, and as an at-will employee her position was freely terminable.

[3] Restatement (Second) of Torts § 46 (1965) states in relevant part: "(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

12

in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community[,]" Jones v. Dalton, 2009 WL 1160335, at *5 (Ky. Ct. App. May 1, 2009) (quotation omitted). "Maintaining this restrictive view, Kentucky courts have routinely granted summary judgment in favor of the defendant." Sacharnoski, 187 F. Supp. 2d at 845. See Stringer,151 S.W.3d at 791 ("We have set a high threshold for IIED/outrage claims . . . ."). In light of this standard, the Court finds that Greathouse's conduct at issue here was not sufficiently outrageous to support an IIED claim.

"Citizens in our society are expected to withstand petty insults, unkind words and minor indignities. Such irritations are a part of normal, every day life and constitute no legal cause of action." Kroger Co. v. Willgruber, S.W.2d 61, 65 (Ky. 1996). "Nor is [IIED] to compensate for behavior that is cold, callous and lacking sensitivity." Osborne v. Payne, 31 S.W.3d 911, 914 (Ky. 2000) (quotation omitted). The profanity, yelling, degrading comments, and threats at issue here, all fall squarely within behavior consisting of "petty insults, unkind words and minor indignities."[4] Although Greathouse's behavior was unacceptable and offensive, it was not sufficiently outrageous required in order to succeed on an IIED claim. See Humphress v. United Parcel Serv. Inc., 172 F.3d 48, at *3 (6th Cir. 1998) (unpublished table decision) (denying IIED claim because defendant's "conduct, [including: grease placed on parts of his truck; obscenities on his windshield; and defacing picture of his daughter,] did not rise to the level of outrageousness necessary for recovery under Kentucky law"); Pierce v. Commonwealth Life Ins. Co., 825 F. Supp. 783, 789-90 (E.D. Ky. 1993) (IIED claim dismissed where defendant's employee commented to the plaintiff that he "might as well have been a murderer, rapist, or child molester"); Humana of Kentucky, Inc. v. Seitz, 796

---

[4] The one alleged threat that may have been outrageous occurred when a gun was left on the desk of Wayne Orscheln. However, Orscheln is not a party to this lawsuit.

S.W.2d 1, 3 (Ky. 1990) (finding no outrageous conduct where plaintiff delivered a stillborn baby, and the nurses told her to "shut-up" and that they would dispose of the baby right there at the hospital); Allen v. Clemons, 920 S.W.2d 884, 886-87 (Ky. Ct. App. 1996) (holding that the defendant's conduct of placing a sign in his yard, reading "Danger-Child Molester in the Community," did "not reach the level of outrageous conduct necessary to constitute a tort").

The Court simply cannot reasonably conclude that any of the behavior alleged by Plaintiffs was "truly outrageous, intolerable and . . . result[ed] in bringing one to his knees." Osborne, 31 S.W.3d at 914. Accordingly, the IIED claim is dismissed

### E. Terroristic Threatening

Plaintiffs seek a civil remedy for violation of criminal statute K.R.S. § 508.080 which prohibits a "threat[] to commit any crime likely to result in death or serious physical injury to another person or likely to result in substantial damage to another person." Plaintiffs base their claim on an exchange between Greathouse and Filback:

Greathouse: "I brought my big guns in today."

Filback: "Well I guess I'll hide under my desk."

Greathouse: "You're not safe there. No one is safe."

(Pls.' Resp. 25.) Plaintiff Murphy admitted in her deposition that Greathouse was likely referencing the fact that the Company's President was coming to the plant that day. In this context, no reasonable juror could possibly conclude that the statements amount to a terroristic threat. Accordingly, the claim is dismissed.

### F. Remaining Claims

Defendant asserts that Plaintiffs have voluntarily abandoned their libel, slander, defamation,

14

tortious interference with Plaintiffs' ability to earn money, and whistle-blower claims. The Court agrees. By failing to specifically respond to Defendant's arguments on the claims above, the claims have been abandoned. See Knittel v. First Fin. Mortgage Corp., 2009 WL 1702174, at *3 (E.D. Ky. June 17, 2009) ("By failing to respond specifically to Citimortgage's arguments on those claims, the plaintiffs have abandoned them, and the court will grant summary judgment to Citimortgage."); Larimore v. Grant, 2006 WL 2037390, at n.3 (W.D. Ky. July 17, 2006) (claim abandoned where plaintiff failed to address the claim in response to defendant's motion for summary judgment, but addressed other claims); Dage v. Time Warner Cable, 395 F. Supp. 2d 668, 679 (S.D. Ohio 2005) (same).

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss [DN 25] is **GRANTED**.

cc. Counsel of Record